IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JOSHUA KUHN,**

    **Plaintiff,**

v.                                               Case No.: 3:22-cv-00486

**JASON CASTO; JAMES BARKER;
JENNIFER HENDERSON;
VALERIE BAILEY; STEVEN ALLEN;
and LLOYD ERWIN.**

    **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Plaintiff, Joshua Kuhn, instituted this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that staff at the Western Regional Jail and Correctional Center ("WRJ") violated his Eighth Amendment rights when they failed to protect him from other inmates. (ECF Nos. 2, 32, 39). Pending before the Court are Motions to Dismiss filed by Defendants James Barker and Steven Allen, (ECF No. 56), Valerie Bailey and Jennifer Henderson (ECF No. 58), and Lloyd Erwin (ECF No. 64), asserting that the pleadings filed by Kuhn fail to state a claim against them. This case is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** the Motions to Dismiss filed by Defendants Barker, Allen, Bailey,

Henderson, and Erwin, (ECF Nos. 56, 58, 64), **DISMISS** the complaint, amended complaint, and second amended complaint against the foregoing defendants, and **REMOVE** them as parties in this civil action.

I.    **Relevant History**

Kuhn filed the complaint herein on October 26, 2022. (ECF No. 2). Kuhn alleges that, on August 19, 2022 at around 5:00 p.m., he was outside of his cell for recreation hour when he was attacked by two inmates wielding broomsticks. (*Id.* at 4). The two inmates had concealed the broomsticks in their cell—which was cell 7 on C-Pod. (*Id.* at 4). Kuhn suffered severe cuts to his head and a concussion. (*Id.*). He was taken to the Emergency Room at St. Mary's Medical Center, where doctors gave him a CT scan and stapled his head wounds. (*Id.* at 5). Kuhn states that he continues to experience headaches from the injuries he suffered in the assault. (*Id.*). Kuhn asserts that at the time of the attack, he was housed in a locked intake pod at the WRJ, which had seven correctional officers assigned to it. (*Id.* at 4). He contends that these officers knew he was in danger, yet failed to protect him from the attack; indeed, one of the officers, Defendant Jason Casto, improperly opened the door of the attackers' cell, giving them access to Kuhn. (*Id.* at 4–5). Kuhn sues all Defendants in their personal and official capacities. (*Id.* at 5). He requests injunctive relief to change policy at the WRJ to protect inmates and $60,000 in damages for pain and suffering, medical bills, court fees, and attorney's fees. (*Id.* at 5).

At the time of filing his initial complaint, Kuhn did not know the identities of the seven correctional officers on duty at the time of the incident. (*Id.* at 1). Pursuant to the undersigned's order, another defendant who has since been dismissed from this suit, Superintendent Aldridge, provided plaintiff with the names of those correctional officers. (ECF No. 21). The undersigned entered a show cause order, directing Kuhn to submit an

amended complaint within 30 days in order to avoid dismissal for failure to prosecute. (ECF No. 29). Kuhn filed an amended complaint on May 25, 2023; the amended complaint added the names of the correctional officers but did not make specific allegations against them. (ECF No. 32). The undersigned then entered an order directing Kuhn to file a second amended complaint to set out his specific factual allegations against each defendant, (ECF No. 33), and Kuhn filed a second amended complaint with those allegations on June 16, 2023. (ECF No. 39).

Kuhn makes the following relevant allegations[1] in his second amended complaint: He alleges that Defendants Valerie Bailey and Jennifer Henderson were posted in Central Control, that they had access to camera footage of C-Pod Section 1, and that they failed to notice Kuhn's attackers take the broomsticks to their cell. (ECF No. 39 at 2). He alleges that Defendant James Barker, the C-Pod Rover, was in charge of security checks each hour, and that Barker either failed to conduct the required security checks or disregarded the danger posed to others by the missing broomsticks.[2] (*Id.* at 1). The second amended complaint does not make allegations against Defendants Steven Allen or Lloyd Erwin by name, but includes allegations against "Supervisors and Core Officers"—Steven Allen was a Supervisor, and Lloyd Erwin was a Core Officer. (ECF Nos. 32 at 1, 39 at 3). Kuhn alleges that the Supervisors and Core Officers had access to camera surveillance footage of the incident, were in charge of security checks, and did not notice that the broomsticks had been moved to cell 7. (ECF No. 39 at 3).

---

[1] Defendant Casto—who allegedly opened the door of cell 7, giving the two inmates the opportunity to attack Kuhn—has not filed a motion to dismiss, and the allegations against him are not discussed herein.

[2] Kuhn does not elaborate on where the broomsticks were located before they were taken by the inmates in cell 7, or when the broomsticks might have been taken into cell 7. (*See* ECF Nos. 2, 32, 39). He simply refers to the broomsticks as "missing." (ECF No. 39 at 1).

3

Defendants Barker and Allen filed a motion to dismiss and accompanying memorandum of law, (ECF Nos. 56, 57), as did Defendant Erwin, (ECF Nos. 64, 65). Defendants Bailey and Henderson filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, and supporting memorandum. (ECF Nos. 58, 59). Defendants Barker, Allen, Bailey, Henderson, and Erwin all argue that Kuhn's official capacity claims for monetary damages are barred by the Eleventh Amendment and that his claims for injunctive relief are too vague and directed at officials who lack the authority to implement any policy changes. (*See* ECF Nos. 57, 59, 65). They also argue that Kuhn's Eighth Amendment claims lack sufficient factual support, that these defendants are entitled to qualified immunity, and that, to the extent Kuhn may be asserting a claim for negligence under state law, those claims also lack sufficient factual support and are barred by West Virginia's qualified immunity doctrine. (*See* ECF Nos. 57, 59, 65). Kuhn did not file a response to any of the Motions to Dismiss or to the Motion for Summary Judgment.

## II.  **Standard of Review**

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that, to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"); *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (holding the purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

4

In resolving a Rule 12(b)(6) motion, the court considers the four corners of the complaint, as well as any exhibits attached to the complaint and documents explicitly incorporated by reference. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Conner v. Cleveland Cnty.*, 22 F.4th 412, 428 (4th Cir. 2022) (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016)). While the court must assume that the facts alleged in the complaint are true, it "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Courts are required to liberally construe pro se complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Defendants Bailey and Henderson also seek summary judgment in their favor.

Summary judgment is proper under Fed. R. Civ. P. 56 when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. The party moving for summary judgment bears the initial burden of showing an absence of evidence that demonstrates the existence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

If the moving party meets this burden, then the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322, n.3. The nonmoving party must do more than rely upon the allegations or the denial of allegations contained in his pleading to defeat a motion for summary judgment; instead, he must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. Concrete evidence includes "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must not resolve disputed facts, nor weigh the evidence. *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1239 (4th Cir. 1995). Instead, the court must accept as true the facts asserted by the nonmoving party and review the evidence "draw[ing] all justifiable inferences" in its favor. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991).

Even still, the "mere existence of a scintilla of evidence" favoring the non-moving

party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009), (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). Thus, while any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co,* 475 U.S. at 587, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (citation omitted).

### III. <u>Discussion</u>

Kuhn alleges that staff at the WRJ violated his Eighth Amendment rights by failing to protect him from other inmates. (ECF Nos. 2, 32, 39). The facts alleged in the original complaint and the two amended complaints (collectively also referred to as "complaint") also raise a potential claim for negligence under West Virginia law. Kuhn sues each Defendant in their official and individual capacities, and he requests both compensatory damages and injunctive relief. (ECF No. 2 at 5–6).

#### A. *Eleventh Amendment Immunity*

Kuhn's complaint includes claims against state employees in their official capacities for monetary damages. As all of the defendants have raised in their memoranda of law, official capacity claims for monetary damages are barred by the Eleventh Amendment. (*See* ECF Nos. 57 at 6, 59 at 5, 65 at 5). The Eleventh Amendment provides a general sovereign immunity for the states; states may not be sued in federal court unless they have consented to be sued. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). This immunity extends to state employees when those employees are

7

sued for monetary damages in their official capacities, because if the lawsuit were successful, the state would be liable for any damages awarded. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, absent consent by the state, a plaintiff may not sue a state employee for money damages in their official capacity; any suit for money damages must be against the employee in his or her personal capacity. *See Wilson v. United States*, 332 F.R.D. 505, 517 (S.D.W. Va. 2019) (citing *Hafer v. Melo*, 502 U.S. 21, 22-23 (1991)). The State of West Virginia has not waived its immunity and consented to suit in § 1983 cases. *Meadows v. Huttonsville Correctional Center,* 793 F. Supp. 684, 686 (N.D.W. Va. 1992). Therefore, because the Eleventh Amendment bars official capacity claims for monetary damages, the undersigned **FINDS** that those claims in Kuhn's complaint must be dismissed.

### B. Injunctive Relief

In addition to monetary damages, Kuhn requests injunctive relief, asking for a change in prison policy to protect other inmates. (ECF No. 2 at 5). The Eleventh Amendment does permit suits against state employees in their official capacities for injunctive relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). However, Kuhn's request for injunctive relief is too vague. He does not specify what policies should change or how they should change. (*See* ECF No. 2 at 5). In fact, Kuhn does not include any allegations in his complaint suggesting that the defendants were acting in compliance with unconstitutional correctional facility policies when they allegedly failed to protect him. To the contrary, he indicates that policies were not followed by the defendants. (ECF No. 39 at 2).

Rule 65 of the Federal Rules of Civil Procedure requires that courts issuing injunctions must state the terms of the injunction specifically and describe in reasonable

detail the acts restrained or required. Fed. R. Civ. P. 65(d)(1). Because Kuhn's lawsuit addresses prison policies and conditions, it is also governed by the Prison Litigation Reform Act, which further requires that injunctive relief be "narrowly drawn" and extend no further than necessary to correct the violation of the federal right at issue. 18 U.S.C. § 3626(a)(1)(A). Kuhn's request for injunctive relief is far too ambiguous to meet these requirements.[3]

Additionally, even if Kuhn had properly specified the change in policy he seeks, these Defendants would not be the appropriate parties to carry out that change. In order to sue a state official for injunctive relief to remedy ongoing violations of federal law, a plaintiff must show a special relationship between the state employee and the actions to be prospectively enjoined—the employee must both be responsible for the ongoing violations and possess the authority to redress them. *Woods v. S. C. Dep't of Health & Hum. Servs.*, No. 318CV00834MGLKDW, 2019 WL 1995136, at *6 (D.S.C., Apr. 18, 2019), report and recommendation adopted, No. 3:18-CV-00834-MGL, 2019 WL 1995511 (D.S.C., May 6, 2019), appeal dismissed and remanded, 777 F. App'x 703 (4th Cir. 2019), (citing *Kobe v. Haley*, 666 F. App'x 281, 299 (4th Cir. 2016)); *see also Swan v. Bd. of Educ.*, 956 F. Supp. 2d 913, 918 (N.D. Ill. 2013), citing *Okpalobi v. Foster*, 244 F.3d 405, 426–27 (5th Cir. 2001) ("Indeed, if a defendant does not have the authority to carry out the injunction, a plaintiff's claim for injunctive relief must be dismissed because the Court cannot enjoin a defendant 'to act in any way that is beyond [the defendant's] authority in the first place.'"). Under West Virginia law, the Commissioner of the West Virginia Division of Corrections and Rehabilitation possesses the authority to establish rules,

---

[3] Furthermore, it seems that Kuhn's real dispute is not that WRJ needs to change its policies but that the existing policies need to be better enforced, e.g., ensuring that employees conduct required security checks and do not release more than one cell for recreation hour at the same time.

policies, and regulations governing all subdivisions and institutions within the division. W. Va. Code § 15A-3-4(a)(3). Defendants Barker, Allen, Bailey, Henderson, and Erwin lack the authority to make any policy changes Kuhn may desire, and his request for injunctive relief must be dismissed against them. Because Kuhn's request for injunctive relief is non-specific and directed at the wrong officials, the undersigned **FINDS** this request for relief must be dismissed.

### C. Eighth Amendment Claims

Kuhn's complaint is brought under 42 U.S.C. § 1983, the federal law which permits plaintiffs to sue state actors for constitutional violations. A claim under 42 U.S.C. § 1983 has two essential elements: there was a violation of the plaintiff's rights under the Constitution and laws of the United States, and the alleged violation was committed by a person acting under color of state law. *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011). Kuhn alleges that, by failing to prevent the attack he suffered at the hands of other inmates, Defendants violated his Eighth Amendment right against cruel and unusual punishment. (ECF No. 2 at 5).

Jail officials have an established duty to protect inmates from a substantial and known risk of harm, including harm inflicted by other inmates. *Cox v. Quinn*, 828 F.3d 227, 239 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). However, not all cases of prisoner-on-prisoner violence will result in liability for the prison officials responsible for the victim's safety, and only the "unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To amount to a constitutional violation, the plaintiff must show that prison officials acted with "deliberate indifference"—the official must know of and disregard an excessive risk of harm to inmate health or safety. *Id.* (holding that "the official must both be aware of

10

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). This requires more than mere negligence; there is no Eighth Amendment violation where a prison official should have perceived a significant risk, but did not perceive that risk. *Id.* at 838. ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

Kuhn alleges that Defendant Barker either failed to conduct regular security checks or disregarded the danger presented by the missing broomsticks. (ECF No. 39 at 1). The failure to conduct regular security checks, standing alone, would not represent a conscious disregard of an excessive risk of harm; rather, failure to conduct security checks would amount to negligence. The alternative allegation, that Defendant Barker disregarded the danger presented by the missing broomsticks, is closer to meeting the deliberate indifference standard, but this allegation still falls short. The complaint does not show that the missing broomsticks, wherever they were missing from, necessarily presented an excessive risk of harm. Kuhn does not allege that Defendant Barker knew that the inmates had taken the broomsticks, that the broomsticks were being held in the inmates' cell, or that those inmates had plans to attack Kuhn or anyone else. While Defendant Barker may have noticed some broomsticks were missing, it is not alleged that Barker knew that the missing broomsticks presented any kind of threat. Without subjective knowledge of a risk of harm, the undersigned **FINDS** that Kuhn's allegations against Defendant Barker fail to meet the deliberate indifference standard, and Kuhn has failed to state a claim against Defendant Barker for a violation of his Eighth Amendment rights.

Kuhn alleges that Defendants Bailey and Henderson had access to camera footage of C-Pod Section 1 and failed to see the two inmates from cell 7 take the broomsticks into their cells. (ECF No. 39 at 2). Defendants Bailey and Henderson provided the Court with affidavits stating that, contrary to Kuhn's assertions, individuals working the central control post (which included Bailey and Henderson on the day of this incident) do not have access to camera views inside the housing pods. (ECF Nos. 58-1, 58-2). However, it is unnecessary to consider those affidavits and convert Bailey and Henderson's motion to dismiss into a motion for summary judgment, because, even taking the allegations as true, Kuhn's complaint fails to state a claim against them under the Eighth Amendment. Kuhn alleges that Bailey and Henderson *failed to see* the other inmates take broomsticks into their cells. This amounts to ignorance, not deliberate indifference. Kuhn does not allege that Bailey and Henderson knew of and disregarded a risk of harm, only that they neglected to see his attackers take the broomsticks. Therefore, the undersigned **FINDS** that Kuhn has failed to state a claim against Defendants Bailey and Henderson under the Eighth Amendment.

Similar to the allegations against Bailey and Henderson, Kuhn alleges that Defendants Allen and Erwin had access to camera footage of the housing pod and failed to notice that the broomsticks had been taken into cell 7. (ECF No. 39 at 3) ("[Allen and Erwin] in fact had acces to camras fotage and was in charge of security checks and it was not notised that broom and mop sticks where held up in cell 7 section 1 to put others in danger.") (errors in original). These allegations that Allen and Erwin failed to notice the broomsticks had been moved are not sufficient to meet the deliberate indifference standard, which would require that the defendants *knew* there was a substantial risk of harm and disregarded that risk. Kuhn would have stated an Eighth Amendment violation

if he alleged, for example, that Defendants Allen and Erwin knew that the other inmates had taken the broomsticks and knew that the other inmates had plans to harm Kuhn and still failed to intervene—that would constitute deliberate indifference, a conscious disregard of an excessive risk of harm to an inmate. But as written, the undersigned **FINDS** that Kuhn's complaint fails to state a claim against Defendants Allen and Erwin for violation of the Eighth Amendment.

Accordingly, in summary, the undersigned **FINDS** that Kuhn fails to state a claim under § 1983 against Defendants Barker, Allen, Bailey, Henderson, and Erwin.

### D. State Law Negligence Claims

As mentioned above, although Kuhn fails to state a claim under the Eighth Amendment, the facts alleged give rise to a potential claim for negligence, as is mentioned in each Defendant's memorandum of law. (ECF Nos. 57 at 13, 59 at 13, 65 at 12–13). Each Defendant argues that, to the extent Kuhn may be asserting a claim for negligence, his complaint lacks sufficient factual support, (ECF Nos. 57 at 13–14, 59 at 13, 65 at 12–13), and Defendants are entitled to qualified immunity under West Virginia law. (ECF Nos. 57 at 17, 59 at 16, 65 at 16–17).

Because there is no federal cause of action for negligence by state correctional employees, *see Vance v. Bordenkircher*, 533 F. Supp. 429, 434 (N.D.W. Va. 1982) (finding no § 1983 claim for a single act of negligence by a state correctional employee), Kuhn's negligence claims would be state law claims, subject to state law immunities and defenses. Under West Virginia law, government employees are absolutely immune for actions taken in legislative, judicial, executive, or administrative policy-making functions, and they possess a qualified immunity for actions taken in any discretionary function. *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 505 (2014). State correctional officers

13

are broadly characterized as serving discretionary functions. *Id.* at 509. A state employee is immune from suit for acts or omissions taken in a discretionary function, unless the act or omission is in violation of a clearly established statutory or constitutional right of which a reasonable person would have known, or if the act or omission is otherwise fraudulent, malicious, or oppressive. *Id.* at 508. "To demonstrate a clearly established right, a plaintiff 'must do more than allege that an abstract right has been violated. Instead, the plaintiff must make a particularized showing that a reasonable official would understand that what he is doing violated that right or that in the light of preexisting law the unlawfulness of the action was apparent.'" *Hughes v. White*, No. 2:20-CV-00730, 2020 WL 7753104, at *3 (S.D.W. Va. Dec. 29, 2020) (quoting *W. Va. Reg'l Jail*, 234 W. Va. at 517).

Kuhn's complaint does not allege that the omissions by Defendants Barker, Allen, Bailey, Henderson, and Erwin were fraudulent, malicious, or oppressive. As addressed above, his allegations do not amount to a constitutional violation, nor does his complaint make a particularized showing of a clearly established statutory right that these Defendants understood they were violating. *Crawford v. McDonald*, No. 21-0732, 2023 WL 2729675, at *8 (W. Va. Mar. 31, 2023). Therefore, under West Virginia law, Defendants Barker, Allen, Bailey, Henderson, and Erwin possess qualified immunity from suit for their acts and omissions related to the incident Kuhn describes in his complaint, and any state law claim for negligence against them must be dismissed. *Id.,* at *8-*9. Because the undersigned concludes that Defendants would be entitled to qualified immunity, it is unnecessary to consider whether Kuhn has pled sufficient factual allegations to state a claim for negligence.

Accordingly, the undersigned **FINDS** that all claims against Defendants Barker, Allen, Bailey, Henderson, and Erwin should be dismissed for failure to state a claim, such

that Defendant Jason Casto would be the only remaining Defendant in this lawsuit.

### IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings herein and **RECOMMENDS** that the Motions to Dismiss filed by Defendants Barker and Allen, (ECF No. 56), Defendants Bailey and Henderson, (ECF No. 58), and Defendant Erwin, (ECF No. 64), be **GRANTED**; the complaint, amended complaint, and second amended complaint be **DISMISSED** against the foregoing defendants; and they be **REMOVED** as parties in this civil action.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing

parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED**:  November 6, 2023

---
Cheryl A. Eifert
United States Magistrate Judge