IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JOSHUA KUHN,**

       **Plaintiff,**

v.                                          **Case No.: 3:22-cv-00486**

**JASON CASTO,**

       **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Plaintiff's *pro se* complaints filed pursuant to 42 U.S.C. § 1983, (ECF Nos. 2, 32, 39),[1] and Defendant's Motion to Dismiss Plaintiff's claims pursuant to Rules 37(b) and 41(b) of the Federal Rules of Civil Procedure, (ECF No. 78). This case is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** the Motion to Dismiss, (ECF No. 78); **DISMISS** the complaints filed in this matter **without prejudice**; and **REMOVE** this action from the docket of the Court.

---

[1] Amended pleadings typically supplant prior filings, but, in this case, it appears the amended complaints supplement the initial pleading. Therefore, they are considered collectively.

I.  **Relevant Facts**

Plaintiff Joshua Kuhn is a West Virginia Division of Corrections and Rehabilitation ("WVDCR") prisoner incarcerated in the Western Regional Jail and Correctional facility ("WRJ") in this judicial district. *See* Inmate Search, West Virginia Division of Corrections and Rehabilitation, https://apps.wv.gov/OIS/OffenderSearch/RJA/Offender/Search. On October 26, 2022, Plaintiff filed a complaint under 42 U.S.C. § 1983, alleging that, on August 19, 2022, he was attacked at the WRJ by two broomstick-wielding inmates when he was outside of his cell for recreation hour. (ECF No. 2 at 4). Plaintiff sued seven unnamed correctional officers; Betsy C. Jividen, Commissioner ("Defendant Jividen"); Superintendent Aldridge ("Defendant Aldridge"); and Christopher Flemings, Chief of Security ("Defendant Flemings"). (*Id.* at 1). Plaintiff claimed that the seven unknown officers violated the Eighth Amendment to the United States Constitution by failing to protect him, although they knew that he was in danger. (*Id.* at 5). He asserted that Defendants Jividen, Aldridge, and Fleming were "responsible as well" because they failed to enforce policy and properly train staff to protect inmates from the risk of injury or death. (*Id.* at 6). Plaintiff requested injunctive relief to change policy at the WRJ to protect inmates and $60,000 in monetary damages for pain and suffering, medical bills, court fees, and attorneys' fees. (*Id.* at 5).

The undersigned granted Plaintiff's application to proceed *in forma pauperis*, and the Clerk of Court issued summonses for the defendants listed in the complaint. (ECF Nos. 6 through 10). The United States Marshals Service was only able to serve Defendants Aldridge and Fleming because Defendant Jividen was no longer employed at the WVDCR, and Plaintiff did not list the names of the seven correctional officers that he intended to sue. (ECF Nos. 11-14). Defendants Aldridge and Fleming filed a motion to dismiss and

2

memorandum in support, asserting that Plaintiff failed to state a claim against them; in the alternative, they argued that any claims that Plaintiff possibly asserted against them were barred by Eleventh Amendment immunity and qualified immunity. (ECF Nos. 15, 16). The undersigned notified Plaintiff of his right to respond to the motion and advised him that his failure to respond could support a conclusion that the contentions were undisputed and may result in dismissal of the complaint. (ECF No. 17). Plaintiff was ordered to respond on or before January 27, 2023, but he did not file a response.

On March 10, 2023, the undersigned held a status conference and hearing on the motion to dismiss. (ECF No. 19). Plaintiff appeared in person from the WRJ by videoconference. (*Id*.). The parties discussed the motion to dismiss and deficiencies in the complaint. (*Id*.). Plaintiff expressed that he wished to dismiss Defendants Aldridge and Fleming. (*Id*.). However, before recommending dismissal of those defendants, on March 13, 2023, the undersigned ordered Defendant Aldridge to provide Plaintiff with the names of the correctional officers on duty at the time of the attack; copies of Plaintiff's grievances and responses to them; and documents, including video recordings, related to any investigation or report of Plaintiff's assault. (ECF No. 20 at 1-2). The undersigned also allotted Plaintiff thirty days from the date of the Order to amend his complaint as follows:

> He may add the seven correctional officers by name and state what each officer did or failed to do that violated Plaintiff's constitutional rights. He may do this by preparing a paper entitled "amended complaint," indicating in writing that he wants to add each individual by name and writing down factually what each individual did or failed to do that caused Plaintiff harm. Plaintiff may adopt the facts stated in his original complaint simply by stating that he "reasserts the facts in the complaint as if fully stated" in his amended complaint. Plaintiff shall file the amended complaint with the Clerk of Court.

(*Id*. at 2).

Defendant Aldridge complied with the Court's directive and provided the list of

3

officers, grievances, and other information. (ECF Nos. 21, 24, 27). However, Plaintiff failed to amend his complaint to state claims against specific individuals as instructed. Thus, on April 27, 2023, the undersigned entered a show cause order, notifying Plaintiff that, pursuant to Federal Rule of Civil Procedure 41 and Local Rule of Civil Procedure 41.1, the undersigned would recommend dismissal of this action against the seven unknown correctional officers for failure to prosecute and for failure to abide by a court order, unless Plaintiff could provide a good cause explanation for why his case should remain on the docket within 30 days of the order. (ECF No. 29 at 2). The undersigned advised Plaintiff that, if he wished to prosecute the action, he must submit an amended complaint that met the requirements set forth by the Court, along with an explanation for the untimely submission. (*Id*. at 2-3). The undersigned also filed Proposed Findings and Recommendations ("PF&R"), recommending that the presiding district judge grant Defendants Aldridge and Fleming's motion to dismiss, dismiss the claims against those defendants, and remove them as defendants in this action. (ECF No. 30).

On May 23, 2023, Plaintiff filed an amended complaint. (ECF No. 32). He did not explain the reason for his untimely submission, but he nonetheless provided additional detail regarding his claims. Plaintiff stated that he was housed in cell eight of section C-1 in the WRJ, which was a "locked down pod," and only one cell was allowed out at a time. (*Id*. at 2). On August 19, 2022, Plaintiff was out of his cell at approximately 5:00 p.m. for "showers and phone calls" when the inmates in cell seven summoned him to their cell door, stating that they overheard Plaintiff talking about "D.M.I." and asking why he was talking about him. (*Id*.). Plaintiff was struck by something in his foot, walked off, and then returned to ask what they "hit him with." (*Id*.). The inmates supposedly told Plaintiff that they knew that they could get out of their cell because the correctional officer in the C-

4

Tower was going to let them out to "hand[le]" Plaintiff. (*Id.*). At that point, C-Tower Correctional Officer, Jason Casto ("Defendant Casto"), allegedly opened the door to cell seven, allowing the inmates to attack Plaintiff. (*Id.*). The two inmates came out of their cell and assaulted Plaintiff with broomsticks. (*Id.*). "Finally C.O.'s came rushing in to br[eak] up the fight," and Plaintiff was taken to the WRJ medical unit and then to the emergency department at St. Mary's Medical Center where he received five staples in his head, leaving him with permanent scars. (*Id.* at 2-3). Plaintiff alleged that he would not have been injured if the officers who were responsible for watching over the inmates had "done their job," especially if Defendant Casto had followed protocol and not let the other inmates out of their cell at the same time as Plaintiff. (*Id.* at 3). Plaintiff named four other officers in his Amended Complaint, but he did not include any specific factual allegations against them. (*Id.* at 1-3).

Thus, on June 2, 2023, the undersigned ordered Plaintiff to file a Second Amended Complaint to assert specific factual allegations against those defendants in order to state viable claims against them. (ECF No. 33). Defendants Aldridge and Fleming moved to dismiss the Amended Complaint. (ECF Nos. 36, 37). Plaintiff had until June 30, 2023 to respond to the motion to dismiss, but he did not respond. (ECF No. 38). On June 13, 2023, Plaintiff filed a Second Amended Complaint, adding information about the officers that he named as defendants. (ECF No. 39). He alleged that the C-Pod rover, James Barker, was responsible for performing hourly security checks, and he either failed to conduct the required security checks or disregarded the potential danger of the missing broomsticks when he performed the checks. (*Id.* at 1). According to Plaintiff, the central control officers, Jennifer Henderson and Valerie Bailey, were responsible for viewing the security cameras, and they "failed to see" the two inmates take the broomsticks to their cell. (*Id.*

5

at 2). Plaintiff reasserted that Defendant Casto was the most culpable for the attack because he let the other inmates out of their cell at the same time as Plaintiff and failed to notice the obvious danger, although Plaintiff was visibly distraught, and the policy was to only release one cell at one time. (*Id.*). Plaintiff stated that the supervisors and core officers who had access to camera footage should have noticed the broom and mop sticks in cell seven and realized that it put others in danger. (*Id.* at 3).

After service of process, all remaining defendants except for Defendant Casto filed motions to dismiss Plaintiff's claims. (ECF Nos. 56, 57, 58, 59, 64, 65). The undersigned filed a second PF&R, recommending to the presiding district judge that Defendants Aldridge and Fleming be dismissed for failure to state a claim and Defendant Jividen be dismissed because she was never served, and Plaintiff failed to state a claim against her. (ECF No. 54). The undersigned granted Plaintiff ample time to respond to the other pending motions to dismiss, but he never did. (ECF Nos. 60, 61, 66). The Court adopted the PF&Rs and dismissed Defendants Aldridge, Fleming, and Jividen from the action. (ECF No. 63)

On July 20, 2023, Defendant Casto served interrogatories, requests for admission, and requests for production of documents to Plaintiff. (ECF No. 55). Plaintiff did not respond. Thus, on September 18, 2023, Defendant Casto filed a motion to compel Plaintiff's responses and deem the requests for admission admitted. (ECF No. 67). The undersigned's law clerk held a status conference on October 30, 2023. (ECF No. 70). The discovery phase was thoroughly explained to Plaintiff in plain language, including the process of answering and objecting to discovery requests, the types of discovery tools available, the timing of discovery requests and responses, and other relevant matters. Plaintiff stated that he understood the rules that were explained to him, did not have any

6

further questions, and would respond to the discovery requests within a couple of weeks. The undersigned granted Defendant Casto's motion to compel, in part, ordering Plaintiff to respond to the discovery requests within 14 days, but declined to deem the requests for admission admitted. (ECF No. 71). The undersigned also issued a scheduling order, directing the parties to file initial disclosures, including requiring Plaintiff to provide a list of his medical and out-of-pocket expenses and description of his claimed injuries on or before November 22, 2023. (ECF No. 72). All defendants filed their initial disclosures as ordered, but Plaintiff never did. (ECF Nos. 74, 75).

The undersigned filed a third PF&R, recommending that the defendants other than Defendant Casto be dismissed from the action because Plaintiff did not state viable claims against them. (ECF No. 73). Upon no objection from Plaintiff, the Court adopted the PF&R and dismissed all other defendants. (ECF No. 76). On January 3, 2024, Defendant Casto moved to dismiss Plaintiff's claims for failure to prosecute and violation of court orders. (ECF No. 78, 79). Plaintiff was allotted through January 23, 2024 to respond in opposition to the motion, but he did not respond. (ECF No. 80).

## II. Discussion

"The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." *Link v. Wabash R. Co.*, 370 U.S. 626, 629 (1962). As the Supreme Court of the United States explained in *Link,* such a sanction is necessary to "prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts" *Id.* at 629-30. Rule 41(b) of the Federal Rules of Civil Procedure ("Rule 41(b)") codifies the district court's inherent power, providing that a complaint may be involuntarily dismissed "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Similarly, under this court's

Local Rule of Civil Procedure 41.1, when it appears that a plaintiff has no interest in further prosecution of a complaint:

> [T]he judicial officer may give notice to all counsel and unrepresented parties that the action will be dismissed 30 days after the date of the notice unless good cause for its retention on the docket is shown. In the absence of good cause shown within that period of time, the judicial officer may dismiss the action.[2]

The appropriateness of a dismissal that is not voluntarily sought by a plaintiff "depends on the particular circumstances of the case." *Ballard v. Carlson,* 882 F.2d. 93, 95 (4th Cir. 1989). When assessing whether to impose the sanction of dismissal, the court should consider four factors, including: (1) the degree of personal responsibility on the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay in prosecution; (3) the presence or absence of a history of plaintiff deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal. *Davis v. Williams,* 588 F.2d 69, 70 (4th Cir.1978). "A district court need not engage in a rigid application of this test, however, when a litigant has ignored an expressed warning that failure to comply with an order will result in the dismissal of his claim." *Taylor v. Huffman,* Case No. 95-6380, 1997 WL 407801, at *1 (4th Cir. 1997) (unpublished).

Having considered each of these factors, in turn, the undersigned concludes that dismissal is warranted. This matter has been pending on the Court's docket for over fifteen months with very little progress. The only actions that Plaintiff has taken to prosecute his case were to twice amend his complaint and appear at the status conferences by videoconference from the WRJ. The undersigned has already issued one Show Cause

---

[2] L. R. Civ. P. 41.1, implemented by the United States District Court for the Southern District of West Virginia, states "When it appears in any pending civil action that the principal issues have been adjudicated or have become moot, or that the parties have shown no interest in further prosecution, the judicial officer may give notice to all counsel and unrepresented parties that the action will be dismissed 30 days after the date of the notice unless good cause for its retention on the docket is shown."

Order, and Plaintiff has never responded to any of the numerous motions to dismiss filed in this case, objected to the PF&Rs recommending dismissal of all but one of the Defendants, or answered any of Defendant Casto's discovery requests that were filed in July 2023. Plaintiff readily admitted during the October 2023 status conference that he received the discovery requests and other court filings. After being advised of the relevant federal and local rules governing discovery and told that he risked dismissal of his case if he failed to respond to the discovery requests and motions served upon him, Plaintiff insisted that he would promptly file his discovery responses. On November 3, 2023, Plaintiff was ordered to respond to the discovery requests by November 20, 2023 and file initial disclosures by November 22, 2023. (ECF Nos. 71, 72). Plaintiff violated both orders. In addition, per order dated January 4, 2024, Plaintiff was permitted through January 23, 2024 to respond to Defendant Casto's motion to dismiss. He did not file a response, leaving the pending motion unopposed.

As always, the undersigned is cautious in recommending dismissal of a plaintiff's claims for failure to prosecute. In a recent unpublished decision, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") vacated and remanded a district court's order dismissing a federal prisoner's action for failure to prosecute. *Martin v. Warden of FCI Hazelton*, No. 22-6594, 2024 WL 490347, at *1 (4th Cir. Feb. 8, 2024). In that case, the district court dismissed the action because the plaintiff failed to comply with an order to pay a partial filing fee. *Id.* On appeal, the plaintiff claimed that he never received the district court's order. *Id.* The Fourth Circuit noted that the district court relied on the fact that the return receipt showed that the order was delivered to the prison, but that receipt did not indicate whether the prison staff gave the order to the plaintiff. *Id.* Therefore, because the district court did not have the opportunity to resolve the factual

9

question of whether the plaintiff timely received notice of the order, the Fourth Circuit could not evaluate whether the district court properly exercised its discretion in dismissing the action under Rule 41(b). *Id.*

The undersigned determines that the factual circumstances in *Martin* are plainly distinguishable from this case. First, the undersigned notes that Rule 41(b) allows the Court to involuntarily dismiss a case if the plaintiff "fails to prosecute or to comply with these rules or a court order." In *Martin*, the dismissal was based entirely on the plaintiff's supposed violation of a court order. Here, in addition to violating court orders, Plaintiff has evidenced a clear pattern of failure to prosecute the case, which provides an independent basis for dismissal under Rule 41(b). Even if Plaintiff alleged, like the plaintiff in *Martin*, that he did not receive the November 2023 orders, there is other undisputed evidence of his failure to prosecute this case. Plaintiff admittedly received the discovery requests and motion to compel, knew that he must respond in order for his case to progress, and stated in October 2023 that he would respond. The consequences of his lack of participation in the case were explained to Plaintiff face-to-face. Yet, Plaintiff has still failed to take any actions to further the case more than three months later.

Also, unlike *Martin*, this case has been pending for over one year and has reached an impasse because Plaintiff refuses to cooperate in discovery even after a motion to compel was filed, a status conference was held, and Plaintiff promised to file his responses. In *Martin*, by contrast, the dismissal occurred at the inception of the case and the plaintiff's only warning that the action might be dismissed was in a court order that the plaintiff allegedly did not receive. This case has languished for many months, and Plaintiff was well aware that he must respond to the discovery requests and pending motions, or he risked dismissal. Despite numerous warnings that were provided to

10

Plaintiff in person and by court order, Plaintiff wholly abandoned his claims and failed to prosecute the action.

For the above reasons, the undersigned **FINDS** that Plaintiff is entirely responsible for the delay in prosecution, and the delay has prejudiced Defendant given that witnesses become unavailable, and memories become stale with the passage of time. Plaintiff has historically proceeded in a deliberately dilatory fashion, necessitating a show cause order, motion to compel, and status conferences. He has disregarded numerous warnings from the Court. Therefore, a sanction less severe than dismissal plainly will not be effective in this case. *See Ballard,* 882 F.2d at 95-96. While dismissal is the preferable course, the undersigned acknowledges that the reason for Plaintiff's failure to prosecute this action is unknown, and the statute of limitations has not expired on his claims. Therefore, the undersigned concludes that dismissal should be without prejudice to account for the unlikely possibility that Plaintiff's dilatoriness is excusable and there is good cause and a basis to either reopen or reinstitute the claim.

### III. Proposal and Recommendation

Accordingly, for the stated reasons, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that the presiding District Judge **GRANT** the Motion to Dismiss, (ECF No. 78); **DISMISS** the complaints filed in this matter **without prejudice**; and **REMOVE** this action from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall

have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn,* 474 U.S. 140 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

**DATED**: February 14, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge